UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CARYL E. TAYLOR, Individually | ) | |
| and as personal representative of the | ) | |
| estate of MARK E. TAYLOR, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-69-B-W |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER ON DEFENDANT'S MOTION TO DISMISS COUNTS IV, V, AND VI</u>**

This Court grants Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's lack of crashworthiness, denies its motion to dismiss the misrepresentation count, and dismisses without prejudice its motion to dismiss the breach of fiduciary duty count.

**I.      Procedural History**

On June 2, 2004, Mark Taylor was fatally injured in an automobile accident on Interstate 95 in Penobscot County, Maine while operating a truck manufactured by the Defendant. *Compl.* (Docket # 1 – Attach. 1). Caryl E. Taylor, his widow and personal representative of his estate, has brought suit against Ford Motor Company (Ford), alleging wrongful death, strict product liability, negligence, breach of warranty, lack of crashworthiness, breach of fiduciary duty, misrepresentation, and a violation of Maine's Deceptive Trade Practices Act. *Id.* The Plaintiff filed suit in Penobscot County Superior Court on May 4, 2006, and Ford removed the case to this Court on June 1, 2006. *Notice of Removal* (Docket # 1). On June 12, 2006, Ford moved to dismiss counts four through six – lack of crashworthiness, breach of fiduciary duty, and misrepresentation – arguing

that they fail to state claims upon which relief can be granted. *Def.'s Mot. to Dismiss* (Docket # 4). Plaintiff opposes. *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss* (Docket # 13)(*Pl.'s Mem.*).

## II.     Standard of Review

Rule 12(b)(6) provides, in part:

Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . .

Fed. R. Civ. P. 12(b)(6). "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998)). A defendant is entitled to dismissal only if it "'appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (internal quotation omitted). *See also Nethersole v. Bulger,* 287 F.3d 15, 18 (1st Cir. 2002).

## III.     Statement of Facts

On June 2, 2004, Mark Taylor owned and operated an F-250 pick-up truck which Ford had designed, manufactured, assembled, tested, inspected, advertised, marketed and distributed. *Compl.* at ¶¶ 4-6. On that date, Mr. Taylor, the sole occupant of the truck, was traveling north on Interstate 95, near the town of Edinburg at Mile Marker 214, Penobscot County, Maine. *Compl.* at ¶ 6. The truck left the roadway and rolled several times before coming to rest on its wheels. *Id.* at ¶ 7. During the rollover, the roof, front

windshield, roof assembly, side windows and supporting pillars, door assemblies and surrounding components, were crushed. *Id.* at ¶ 8. As a consequence, Mr. Taylor was seriously and fatally injured, and Plaintiff Caryl Taylor incurred, individually and as the personal representative of his estate, funeral expenses, loss of income, loss of comfort, society, support, companionship, and emotional distress. *Id.* at ¶¶ 9, 12.

### IV.   Discussion

#### a.  Lack of Crashworthiness

In Count IV, Plaintiff asserts a claim based on "lack of crashworthiness":

23. At the time of its design, manufacturing, assembly, testing or lack of testing, wholesaling, advertising, marketing and sale of the truck, the Truck was in a defective and dangerous condition.
24. The Truck was not crashworthy in that its roof, windshield, roof assembly, side windows, front windshield and supporting pillars were defective in design and was unsafe and inadequate for the intended purposes and uses of said vehicle.
25. The Truck's hazards and defects, as above described, and the Truck's lack of crashworthiness were substantial factors causing the death of Mark.

*Compl.* at ¶¶ 23-25. Defendant argues:

> The claim that the plaintiff attempts to make in Count IV is nothing other than a re-statement of the claims articulated in Counts I, II, and III. "Crashworthiness" is one aspect of a vehicle. It is one way in which a manufacturer or seller meets (or fails to meet) its obligations under the strict liability statute, common law negligence theories and the statutorily applied warranties. It is not a claim in and of itself, it is subsumed within the theories articulated in Counts I, II, and II [sic] and should be dismissed.

*Def.'s Mem. of Law in Support of its Mot. to Dismiss* at 2 (Docket # 5)(*Def.'s Mem.*).

Plaintiff does not dispute that "[c]rashworthiness, while clearly applicable to strict liability, negligence and breach of warranties, has never been defined as an independent

cause of action", but contends that "[i]t is for this instant Court to so define if Count IV stands alone, or is so merged into Counts I, II and III." *Pl.'s Mem.* at 11.

The First Circuit has stated that the "crashworthiness or enhanced injury doctrine extends the manufacturer's liability to cases in which the plaintiff suffers separate or enhanced injuries in the course of an initial accident caused by his own vehicle." *Connelly v. Hyundai Motor Co.,* 351 F.3d 535, 538 n.3 (1st Cir. 2003)(citation omitted). *See generally Larsen v. Gen. Motors Corp.,* 391 F.2d 495 (8th Cir. 1968). Described in the Restatement (Third) of Products Liability § 16 (1998),[1] the doctrine is "a type of defect", not a separate and distinct cause of action. *Roe v. Deere & Co.,* 855 F.2d 151, 153-54 (3d Cir. 1988). It is a theory under which an independent claim such as product liability or negligence may be pursued. 63A Am. Jur. 2d *Products Liability* § 1020 ("Under the 'enhanced injury,' or 'crashworthiness,' or 'second collision' doctrine, a manufacturer or seller of a product may be liable under strict liability, negligence, or breach of warranty principles…."). *See also Roe,* 855 F.2d at 154 ("[c]rashworthiness is merely a subset of strict liability"); *Trull v. Volkswagen of Am., Inc.,* 761 A.2d 477, 479 (N.H. 2000)("The plaintiffs contend that the defendants are liable in, inter alia,

---

[1] Increased Harm Due to Product Defect

     (a) When a product is defective at the time of commercial sale or other distribution and the defect is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm.

     (b) If proof supports a determination of the harm that would have resulted from other causes in the absence of the product defect, the product seller's liability is limited to the increased harm attributable solely to the product defect.

     (c) If proof does not support a determination under Subsection (b) of the harm that would have resulted in the absence of the product defect, the product seller is liable for all of the plaintiff's harm attributable to the defect and other causes.

     (d) A seller of a defective product that is held liable for part of the harm suffered by the plaintiff under Subsection (b), or all of the harm suffered by the plaintiff under Subsection (c), is jointly and severally liable or severally liable with other parties who bear legal responsibility for causing the harm, determined by applicable rules of joint and several liability.

*Id.*

negligence and strict liability because the automobile was not crashworthy"); *Smith v. Ariens Co.,* 377 N.E.2d 954, 956-57 (Mass. 1978); *Wagner v. Int'l Harvester Co.,* 611 F.2d 224, 230 (8th Cir. 1979)(citing *Larsen,* 391 F.2d at 502 for the proposition that whether a "manufacturer should be held liable for enhanced injuries turns on general negligence principles"); *Cleveland v. Piper Aircraft Corp.,* 890 F.2d 1540, 1546 n.7 (10th Cir. 1989)(comparing New Jersey's adoption of crashworthiness liability predicated on strict liability principles to New Mexico's adoption of the same predicated on negligence only); *Connelly,* 351 F.3d at 538 (plaintiff presented their crashworthiness theory under negligence and strict liability counts).

Because crashworthiness is not a stand alone cause of action and is subsumed within other counts, this Court GRANTS Defendant's motion to dismiss Count IV.

### b.  Breach of Fiduciary Duty

In Count V, Plaintiff asserts breach of fiduciary duty:

27.  Ford, by designing, manufacturing, assembling, testing or lack of testing, inspecting or lack of inspecting, wholesaling, advertising, marketing and sale of
the Truck and other F Series trucks has undertaken and assumed a special responsibility and relationship and was/is a fiduciary towards any consumer, including the deceased herein, injured by the Truck and F Series trucks.

28.  That a consumer, including the deceased herein, has (had) the right to and does (did) expect that Ford would (did) stand behind its product.

29.  That public policy demands that the burden of injuries and/or deaths caused by Ford's F Series trucks, and the Truck herein, be placed upon Ford who had superior knowledge, and who manufactured, advertised, designed, assembled, tested or not tested, wholesaled, marketed and sold the same.

30.  That a disparate position and influence existed between plaintiff's decedent and Ford.

31.  That plaintiff's decedent relied upon, trusted and had confidence in Ford to manufacture, assemble, test, inspect, advertise, market, and wholesale said Truck in a safe condition; that Ford violated said trust, resulting in Mark's death.

32.   That Ford marketed and advertised the Truck and its F Series trucks as "tough".

33.   That, in fact, the Truck and Ford's F Series trucks were and are not "tough" when involved in a rollover event.

34.   In consequence of Ford's violation of its fiduciary and special relationship with plaintiff's decedent herein, and other consumers of Ford's F Series trucks, Mark died when the Truck rolled and killed him.

*Compl.* at ¶¶ 27-34.   Seeking dismissal, Defendant argues that a "general allegation of confidential or fiduciary relation is not a sufficient basis for establishing the existence of one" and that the Complaint fails to plead with sufficient particularity "the circumstances under which a fiduciary relationship was created."   *Def.'s Mem.* at 2.   Plaintiff vehemently responds that the claim should not be dismissed.  *See Pl.'s Mem.* at 2-6.

Generally, a claim for breach of fiduciary duty need only comply with the notice standards of Rule 8 of the Federal Rules of Civil Procedure.[2]  *See Lawson v. Affirmative Equities Co., L.P.,* 341 F. Supp. 2d 51, 67 (D. Mass. 2004).  There is authority, however, within the First Circuit that a claimed breach of fiduciary duty based on fraud must satisfy the more rigorous standards of Rule 9(b).[3]  *See Gerber v. Bowditch,* No. 05-10782-DPW, 2006 U.S. Dist. LEXIS 27552, *41-*42 (D. Mass. May 8, 2006)(Rule 9(b) imposes a "heightened pleading standard for claims based on fraud" and "[t]his rule extends to all claims of fraud, 'whatever may be the theory of legal duty statutory, tort, contractual, or fiduciary'")(citations omitted); *Sachs v. Sprague,* 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005)("claims alleging intentional breaches of fiduciary duties are subject to the heightened pleading requirements of Rule 9(b)")(citation omitted). However, to rule on this question as regards Count V, it is unnecessary to resolve

---

[2] Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2).

[3] Rule 9(b) reads: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity". *Id.*

whether Rule 8(a) or Rule 9(b) applies,[4] because Ford has not objected to the adequacy of the pleading with respect to its allegation of fraud; it has only asserted that the Plaintiff has failed to allege facts sufficient to constitute a fiduciary relationship.

Maine law requires some degree of particularity for the existence of a fiduciary relationship in claims of breach of fiduciary duty. *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 21, 738 A.2d 839, 846-47. In *Bryan R.*, the Maine Law Court held that "to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship". *Id.* The Law Court explained the reasoning underlying this heightened pleading requirement: "…[B]ecause the law does not generally require individuals to act for the benefit of others, the factual foundations of a fiduciary relationship must be pled with specificity." *Bryan R.*, 1999 ME 144, ¶ 21, 738 A.2d at 846.

The salient elements of a fiduciary relationship are: "(1) 'the actual placing of trust and confidence in fact by one party in another,' and (2) 'a great disparity of position and influence between the parties at issue'". *Bryan R.,* 1999 ME 144, ¶ 19, 738 A.2d at 846; *Diamond Phoenix Corp. v. Small*, No. 05-79-P-H, 2005 U.S. Dist. LEXIS 12798, *14 (D. Me. Jun. 28, 2005). On the surface, Plaintiff's Complaint meets both elements. Plaintiff asserts that "plaintiff's decedent relied upon, trusted and had confidence in Ford

---

[4] Despite strong indications from the District of Massachusetts and elsewhere that it does, this Court is mindful of the Supreme Court's caution in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002)(The simplified pleading standard limned in Rule 8(a) "applies to all civil actions, with limited exceptions."). In *Educadores Puertorriquenos En Accion v. Hernandez,* 367 F.3d 61 (1st Cir. 2004), holding that the heightened pleading requirement does not apply to civil rights cases, the First Circuit noted that "*Swierkiewicz* has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result." *Id.* at 66.

to manufacture, assemble, test, inspect, advertise, market, and wholesale said Truck in a safe condition," *Compl.* at ¶ 31, and that "a disparate position and influence existed between plaintiff's decedent and Ford."   *Id.* at ¶ 30.   However, it is "specific facts" constituting the alleged relationship that the Maine Law Court requires, and *Bryan R.* emphasized that "[r]ecitation of those basic elements [of a fiduciary relationship] cannot substitute for an articulation in the complaint of the specific facts of a particular relationship."  1999 ME 144, ¶ 22, 738 A.2d at 847.

The  ordinary  buyer-seller  relationship,  even  where  the  seller  has  superior bargaining power and knowledge, is not a fiduciary one.  *See Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061-TEH, 2005 U.S. Dist. LEXIS 20221, * 7-*13 (N.D. Cal. Aug. 25, 2005); *Richardson v. Reliance Nat'l Indemnity Co.*, No. C-99-2952-CRB, 2000 U.S. Dist. LEXIS 2838, * 28 (N.D. Cal. Mar. 9, 2000); *Dorian v. Harich Tahoe Dev.*, No. C-94-3387 DLJ, 1996 U.S. Dist. LEXIS 21627, *14-*16 (N.D. Cal. Jan. 16, 1996); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 616 (D.N.J. 1996); *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 926 (N.M. Ct. App. 2003); *Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 673 P.2d 660, 675-76 (Cal. 1983).  *See also Bryan R.,* 1999 ME 144, ¶ 23, 738 A.2d at 847 (citing *Jackson v. Tedd-Lait Post No. 75,* 1999 ME 26, ¶ 8, 723 A.2d 1220, 1221 for the proposition that there is "no special relationship between the American Legion and a 'regular customer' except as created by the Maine Liquor Liability Act").

Sellers may "routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value", without becoming fiduciaries.  *Children's Television*, 673 P.2d at 676.  In such transactions, the seller is

held to the "mores of the marketplace".  *Id.*  In contrast, a fiduciary "assumes duties beyond that of mere fairness and honesty in marketing his product…."  *Id*.  To become a fiduciary, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *Children's Television*, 673 P.2d at 675-76 (citations omitted).  The exception to the general principle that a buyer-seller relationship is not vested with fiduciary obligation is bottomed on a "close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance."  *Id.* at 676 n.22 (citation omitted).[5]

An "essential feature and consequence of a fiduciary relationship is that the fiduciary becomes bound to act in the interests of her beneficiary and not of herself.  Obviously, the dynamic does not inhere in the ordinary buyer-seller relationship."  *Prudential*, 975 F. Supp. at 616.  The typical seller is in business to profit from the sale.  By contrast, a fiduciary must "undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary."  *Children's Television*, 673 P.2d at 676 (citation omitted).  A fiduciary's "power to transact business with his beneficiary is severely limited; he must use the utmost good faith and, if he profits from the transaction, the law presumes the agreement was entered into by the beneficiary 'without sufficient consideration and under undue influence.'"  *Id.* (citations omitted).

---

[5] A recent example of an exception is found in *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, No. CV06-1007 CAS, 2006 U.S. Dist. LEXIS 41195 (C.D. Cal. Jun. 12, 2006).  Judge Snyder refused to dismiss a claim of breach of fiduciary duty, where the plaintiffs alleged that Defendants trained their insurance agents to lure senior citizens into their confidence by offering assistance with estate and financial planning, ultimately to sell them "deferred annuities that matured after their actuarial life expectancies as part of a broad, decade-long scheme to bilk seniors of money."  *Id.* at *2, *27-*32.

To infuse the law of fiduciary relations into personal injuries resulting from the use of consumer products, such as an automobile, would largely displace well-developed concepts of tort, contract, and strict liability law with narrowly-drawn and ill-fitting principles of trust law. *See id.* Peering into the Complaint reveals it is simply insufficient to establish an exception to the general rule. There are no allegations that would generate a special relationship between Plaintiff and Defendant. To the contrary, Plaintiff alleges a fiduciary relationship between Ford and "any consumer", refers to Ford's national advertising campaign, and states no facts from which this Court could infer that a special fiduciary relationship existed between Mr. Taylor and Ford.[6] *Compl.* at ¶¶ 27, 32.

To complicate matters, however, Plaintiff raises an argument that Ford is estopped from challenging the existence of a fiduciary duty because of testimony that Jacques Nasser, its then-President and Chief Executive Officer, gave during the Ford Explorer/Firestone Tire rollover litigation. *Pl.'s Mem.* at 6. To bolster this claim, Plaintiff filed a videotape of brief excerpts from Mr. Nasser's August 23, 2001 deposition testimony. *Video-taped deposition of Jacques Nasser* (Docket # 13 – Exh. B). During the deposition, in response to questions, Mr. Nasser agreed that Ford had a fiduciary relationship with its customers. *Id.* Plaintiff now seeks to impose a legal trust relationship between Ford and Mr. Taylor based on Mr. Nasser's 2001 admission. Although the local rules allow a response from Ford, Ford chose not to file one and has

---

[6] Arguing that his Complaint alleges sufficient facts to establish a fiduciary relationship, Plaintiff relies heavily on *Fortin v. The Roman Catholic Bishop of Portland*, 2005 ME 57, 871 A.2d 1208. *See Pl.'s Mem.* at 4-5. In *Fortin*, the Maine Law Court concluded that a Complaint against the Roman Catholic Bishop of Portland (the "Diocese") by a former altar boy who was sexually abused for years by a priest alleged facts sufficient to establish a fiduciary relationship between the Plaintiff and the Diocese to survive a motion to dismiss. Whatever else may be said, the relationship between Mr. Taylor and Ford Motor Company seems rather distinct from the relationship between Mr. Fortin and the Catholic Church.

raised no objection to this Court's consideration of the videotape deposition of its former CEO.  Local Rule 7(c).  Because the Plaintiff submitted the videotape in response to the Ford motion and Ford failed to respond, the record is silent as to Ford's position.

The videotape contains only very brief edited fragments of Mr. Nasser's August 23, 2001 deposition testimony.  While questioning Mr. Nasser, counsel prefaced his questions by noting that Ford had stated on its web site that it wished to be the partner of choice for its customers.  After Mr. Nasser confirmed that this was correct, counsel asked Mr. Nasser whether he understood that a partnership was a fiduciary relationship built on trust.  Mr. Nasser said that he did.  Mr. Nasser confirmed that, relative to its customers, Ford had superior knowledge of its product and he further acknowledged that Ford operated in the utmost good faith and with scrupulous honesty toward its customers.  He said that "as far as I am aware", Ford represented to its customers that it owed them a fiduciary duty and he agreed that this representation was on Ford's web site and in its advertising.

Whether this Court should consider excerpts from this deposition in ruling on Ford's motion to dismiss is murky.  On a motion to dismiss, a court may not ordinarily "consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Alternative Energy, Inc.*, 267 F.3d at 33 (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).[7] There is a "narrow exception for 'documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for

---

[7] *See* Fed. R. Civ. P. 12(b)("If, on a motion asserting the defense numbered (6) . . ., matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56").

documents sufficiently referred to in the complaint." *Id.* at 33 (quoting *Watterson*, 987 F.2d at 3). Mr. Nasser's deposition was not referred to in the Complaint and it is questionable whether it is a document central to Plaintiff's claim. If this Court should consider the videotape deposition, it would be as a public record.

There is some authority that a transcript from a prior court proceeding can be a public record within this exception. *See Rasheed v. Duval*, No. 94-1634, 1995 U.S. App. LEXIS 15038, *2-*3 (1st Cir. Jun. 19, 1995); 5C Wright & Miller, Federal Practice and Procedure § 1364, at 133-40 (2004). There is other authority, however, to the contrary. *See Coffin v. Bowater Incorporated*, 224 F.R.D. 289, 292 (D. Me. 2004)(the transcript of a bankruptcy court hearing "although a public record, is not referenced in the Amended Complaint nor is it central to Plaintiffs' claims."); *Davidson v. Yihai Cao*, 211 F. Supp. 2d 264, 267 n.2 (D. Mass. 2002). To ground an order to dismiss on this disputed question would be to rely upon a slim reed.

If the Nasser deposition were considered, it might be sufficient to survive a motion to dismiss on the merits. It may seem farfetched that a major corporation would voluntarily elect to assume fiduciary-like obligations toward its customers, disavowing the law's restrictions of its liability and deliberately subjecting itself to the highest level of legal responsibility. Although this Court is highly skeptical as to whether the snippets of testimony from Ford's former CEO bind the Defendant to undertake a wholly new legal relationship with its customers, one that stands distinctly at odds with long-held and well-developed law, this skepticism is at bottom a judgment about the quality of the evidence. This Court is mindful that under Rule 12(b)(6), it must not dismiss unless it appears to a certainty that the plaintiff would be unable to recover on "any set of facts".

*State St.*, 240 F.3d at 87.  Yet, it seems equally inappropriate to issue an order that the Plaintiff may proceed on such a novel and attenuated theory without more.  One alternative would be for this Court to exercise its discretion to convert this motion into a summary judgment motion under Rule 12(b) and allow the parties to more fully present the question, especially since Ford has not been heard from.  But, here, the Complaint was filed in this Court on June 1, 2006 and it is questionable whether the parties would be able, in view of the limited time for discovery, to do justice to the issue.

This Court has resolved, therefore, to dismiss without prejudice Ford's motion to dismiss Count V of the Complaint.  This resolution admittedly has the disadvantage of placing the parties back where they started.  At the same time, though imperfect, it avoids placing a judicial imprimatur either on the use of deposition excerpts to ward off Rule 12(b)(6) motions or on a theory of liability that may ultimately prove untenable, once the issue is more adequately framed.

### c. Misrepresentation

Count VI of Plaintiff's Complaint raises a claim for misrepresentation:

36. That Ford actively and with knowledge thereof, concealed material facts from plaintiff's decedent regarding the Truck and its F Series trucks.
37. That Mark justifiably relied upon Ford's misrepresentations as true and in consequence thereof, purchased and operated said Truck.
38. That said concealment and misrepresentations of facts regarding the Truck and the F Series trucks resulted in Mark's death.
39. In direct consequence of Ford's deceit and misrepresentations, plaintiff has suffered damages.

*Compl.* at ¶¶ 36-39.  Defendant, again citing Fed. R. Civ. P. 9, asserts that "misrepresentation, like any allegation of fraud, must be pled with particularity", and that Plaintiff has not identified the "material facts" that Ford allegedly concealed from Mr. Taylor and which allegedly caused his death.  *Def.'s Mem.* at 3.

13

Plaintiff, in response, asserts that paragraphs 1-34 of the Complaint, incorporated within Count VI, provide the requisite specificity. *See Pl.'s Mem.* at 6. Once again, Plaintiff's theory is that Ford's advertising campaign, and more specifically its assertion that the F Series trucks are "tough", constituted an active concealment of the true state of affairs – namely, that they were unnecessarily flimsy and dangerous. *See Compl.* at ¶¶ 32-33, 36-38. *See also Pl.'s Mem.* at 6-7 ("[W]hen defendant in 2001 and 2002 advertised that 'Ford Trucks are Tough', that was deliberately misleading insofar as Ford trucks have shoddy and flimsy roof structures…Defendant knew…that roof crush could be totally obviated or reduced significantly to such a degree as to provide occupant safety. Ford chose not to do so in its F-Series pick up trucks. That knowledge by Ford, and its deliberate corporate policy to conceal, is misrepresentation").

The Maine Law Court has stated that an "active concealment of the truth", namely steps taken by a defendant to hide the true state of affairs from the plaintiff, constitutes one way of demonstrating fraud. *Kezer v. Mark Stimson Assocs.,* 1999 ME 184, ¶¶ 23-24, 742 A.2d 898, 905. *See also McGeechan v. Sherwood,* 2000 ME 188, ¶¶ 61-62, 760 A.2d 1068, 1081; *Sprague Energy Corp. v. Massey Coal Sales Co.,* No. 05-222-P-S, 2006 U.S. Dist. LEXIS 10582, *17 (D. Me. Mar. 15, 2006)("Fraud need not take the form of an express false statement; rather, it can be predicated on active concealment of the truth"). Here, Plaintiff has asserted, in the paragraphs leading up to Count VI, that Defendant advertised F Series trucks as "tough" when they were in fact known by Defendant to be not, *see Compl.* at ¶¶ 32-33, and that this state of affairs represented Ford's active concealment of the truth from the plaintiff, *Compl.* at ¶ 36. These

allegations are sufficient even under the more stringent pleading requirements of Rule 9(b) to survive a motion to dismiss.[8]

Defendant's motion to dismiss on Count VI is DENIED.

## V.   Conclusion

This Court GRANTS Defendant's motion to dismiss on Count IV of the Complaint, but DENIES the motion with respect to Count VI.   This Court DISMISSES without prejudice Defendant's motion to dismiss Count V of the Complaint.

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2006

---

[8] Defendant argues that Plaintiff failed to make out a claim for "negligent misrepresentation" under Maine law.  *See Def.'s Mem.* at 3-4.  That may or may not be true, but as just concluded, Plaintiff has made out a claim for active concealment, which is also a sufficient base for a misrepresentation claim.  *See Bob Chambers Ford v. Dealer Computer Servs., Inc.,* No. 98-140-B-C, 2000 U.S. Dist. LEXIS 2446, *22-*28 (D. Me. Jan. 12, 2000); *Fitzgerald v. Gamester,* 658 A.2d 1065 (Me. 1995).