UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CARYL E. TAYLOR, Individually and as personal representative of the estate of MARK E. TAYLOR, deceased,<br><br>Plaintiff,<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   CIVIL ACTION NO.<br>)   06-69-B-W<br>)<br>)<br>)<br>)<br>) |

### FORD MOTOR COMPANY'S REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7(c) of the Rules of the United States District Court for the District of Maine, Defendant Ford Motor Company ("Ford") hereby submits its Reply Memorandum to the Plaintiff's Opposition to Ford Motor Company's Motion for Summary Judgment.

### INTRODUCTION

After a prolonged period of intensive discovery and in response to Ford's Motion for Summary Judgment on all Counts of the Complaint, the plaintiff has made two important concessions[1]. First, the plaintiff concedes judgment should be entered for Ford on all Counts of her Complaint except Count I (Strict Liability) and Count II (Negligence). See Plaintiff's Opposition at pg. 2. Therefore, judgment should be entered forthwith on Counts III (Breach of Warranty), Count IV (Breach of Fiduciary Duty), Count VI (Misrepresentation) and Count VII

---

[1] In response to Ford's Motion for Summary Judgment, the plaintiff also asserts that evidence that the decedent was not wearing his seatbelt at the time of the alleged accident is inadmissible. Ford submits that it will be entitled to present evidence that the decedent was not wearing his seatbelt at the time of the accident because it is material to Ford's defense that the Ford F-250 doors and/or door latches performed as they should have during the rollover accident involving an unbelted passenger as well as how Taylor sustained his fatal injury. But it is premature for the Court to decide the admissibility of this evidence since it is not material to the issues raised in the Summary Judgment Motion, namely, whether expert testimony on product defect is required in this case.

(Deceptive Trade Practices)[2]. Second, the plaintiff limits her defect claims to the Ford F-250's roof and door structure, after initially pursuing additional defect claims based on the Ford F-250's handling and stability characteristics and window/windshield glass. See Plaintiff's Opposition at pgs. 1-2.

Given the plaintiff's concessions, the only remaining question presented by Ford's summary judgment motion is simple and straight-forward: Does Maine law require the plaintiff to present qualified automotive engineering expert opinion testimony to prove her claims that: (1) the roof and door structures of the Ford F-250 were unreasonably dangerous and defective as designed and manufactured by Ford; (2) the Ford engineers who designed and tested the F-250 failed to exercise reasonable care in the field of automotive engineering in doing so; and (3) the roof and door structures failed to perform adequately in this severe rollover crash? Because the answer to this question is an unqualified "Yes," and because the plaintiff has failed to present any qualified automotive engineering expert opinion testimony on these topics, summary judgment should be entered for Ford on all of the plaintiff's remaining defect claims.

## ARGUMENT

As pointed out in Ford's initial memorandum in support of its summary judgment motion, the First Circuit has required plaintiffs in design defect cases to present expert opinion testimony to establish the existence of a defect in a case involving alleged defects in a toaster oven. See *Walker v. General Elec. Co.*, 968 F.2d 116, 117 (1st Cir. 1992). Applying Maine law, the First Circuit upheld the trial court's entry of judgment, because the plaintiffs failed to establish proof of a "defect." *Walker v. General Elec. Co.*, 968 F.2d at 120. Because the plaintiffs' expert was unable to provide any reasonable explanation for the toaster-oven's

---

[2] Count V, Lack of Crashworthiness, was dismissed by Court Order on August 3, 2006.

2

malfunction, aside from his statement that sometimes the shut-off mechanisms will "wear out," the court held that the plaintiffs failed to meet their burden of proving a defect. *Id.*[3]

While the plaintiff disagrees with the precedent of *Walker*, she acknowledges that expert testimony is necessary in any case in which "the negligence and harmful results are not sufficiently obvious as to be within common knowledge [of the average layman]." See Opposition at 2. That is because under Maine law it is clear that expert testimony is required in professional negligence cases against **engineers**, *Seven Tree Manor, Inc. v. Kallberg*, 688 A.2d 916, 917 (Me. 1991), **lawyers**, *Mitchell v. Jackson*, 627 A.2d 1014, 1017 (Me. 1993) and **doctors**, *Cyr v. Giesen*, 108 A.2d 316, 318 (Me. 1954). The only exception to this rule under Maine law is "[I]n cases where the breach or lack thereof is so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen." *Mitchell*, 627 A.2d at 1017. The plaintiff's design defect claims in this case are claims that Ford's automotive engineers failed to exercise reasonable care in the design of the Ford F-250. For that reason, the plaintiff must present qualified expert testimony to prove her allegations, just as plaintiffs in other professional negligence cases have been required to present qualified expert testimony to prove their allegations which involve principles outside the ordinary common knowledge of the average layman. Recognizing the requirement for expert testimony in cases involving professional negligence in other areas of expertise, the plaintiff's argument seems to be that the design and manufacture of a heavy duty pickup truck, and how it performs in a high speed rollover crash, is a simple matter within the common knowledge of ordinary people. She argues that the decision-making process of the Ford automotive engineers who designed the

---

[3] The First Circuit disagreed with the plaintiffs that the "malfunction theory," under which a product malfunction may be used to prove defect if there is an adequate evidentiary basis to allow the case to go to a jury, applied to the facts of the case. 968 F.2d 116, 120 (C.A.1 (Me.),1992) *citing Sochanski v. Sears, Roebuck & Co.*, 689 F.2d 45 (3d Cir.1982); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir.1979).

doors and door latches of the F-250 pickup truck are unlike the decision-making process and conduct of lawyers, doctors and other engineers where Maine courts have required expert testimony. But, as the evidence presented by the plaintiff herself establishes, the design and manufacture of a 2002 model year heavy duty pickup truck, along with the performance of its doors and roof structures in crashes such as severe rollovers, are not within the ordinary common knowledge of the average layperson. A review of the Plaintiff's Statement of Additional Material Facts, the eighty Exhibits filed with the Statement, and Ford's Reply to the Plaintiff's Statement of Additional Material Facts filed herewith, establish that the decisions made by engineers exercising their judgment in the design and manufacture of the door and roof structures of the Ford F-250, are complex processes that require specialized scientific and engineering knowledge beyond the experience of laymen. The evidence proves that Ford and its engineers considered carefully how to design the Ford F-250 roof, door and door latches so as to comply with reasonable and accepted principles within the field of automotive engineering and safety. The plaintiff and her lawyers may disagree with this decision-making process and with the design of the F-250 which resulted, but that does not entitle a jury to find Ford negligent, or the design of the truck unreasonably dangerous and defective, in the absence of expert testimony.

"It is generally necessary to have credible expert testimony to support a claim of any automobile design defect, although it is not necessary that experts must be able to pinpoint exactly the cause of an accident." 59 AMJUR POF 3d 73 §12 *citing Carey v. General Motors Corp.*, 377 Mass. 736, 740 (1979). Pennsylvania, Massachusetts, Tennessee, Texas, California, Missouri, Utah, Ohio and Illinois have required expert testimony to prove defective design in automobile cases. *Cardullo v. General Motors Corp.*, 378 F.Supp. 890, 893 (D.C.Pa. 1974) (absence of expert testimony bearing on whether the manufacturer acted reasonably in equipping

automobile with single cylinder braking system insufficient to raise a 'negligent design' issue); *Gynan v. Jeep Corp.*, 434 N.E.2d 688, 690 (1982) (expert testimony required to prove defect in motor vehicle); *Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 233 (C.A.Tenn., 1980) ("where the part is not patently defective, expert testimony is the only available method to establish defectiveness"); *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 137 (Tex.,2004) (requiring "competent expert testimony" and "objective proof" that a defect caused the alleged injuries); *Pruitt v. General Motors Corp.*, 86 Cal.Rptr.2d 4, 6 (Cal.App. 2 Dist.,1999) ("jurors are in need of expert testimony to evaluate the risks and benefits of the challenged [airbag] design"); *Peters v. General Motors Corp.*, 200 S.W.3d 1, 11 (Mo.App. W.D.,2006) ("one can not reasonably infer without expert testimony that the only possible cause for sudden acceleration experienced by the seven witnesses was cruise control malfunction"); *Drysdale v. Ford Motor Co.*, 947 P.2d 678, 680 (Utah,1997) (three expert affidavits supporting driver's design defect claim sufficient to survive automobile manufacturer's motion for summary judgment); *Dent v. Ford Motor Co.*, 83 Ohio App.3d 283, 285 (Ohio App. 9 Dist.,1992) (automobile manufacturer could not be held liable in motorist's design defects/products liability claim absent expert testimony supporting claim); *Baltus v. Weaver Div. of Kidde & Co., Inc.*, 199 Ill.App.3d 821, 834 (Ill.App. 1 Dist.,1990) ("manufacturing negligence resulting in an unreasonably dangerous product seems particularly appropriate for expert opinion").

Maine's recognition that expert testimony is required in all cases involving matters not sufficiently obvious as to be within the ordinary common knowledge of laypersons, demonstrates that it would require expert testimony in this strict liability and negligence case involving the complex design of a heavy duty 2002 model year pickup truck. Under Maine strict liability law, a jury must examine "the utility of the product's design, the risk of such design, and the

feasibility of safer alternatives" in design defect cases. *Moores v. Sunbeam Products, Inc.*, 425 F.Supp.2d 151, 156 (D.Me. 2006) *citing Lorfano v. Dura Stone Steps, Inc.,* 569 A.2d 195, 196 (Me. 1990). "Negligence and strict liability theories overlap [in design defect cases] in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm." *Guiggey v. Bombardier*, 615 A.2d 1169, 1171 (Me.,1992) *quoting Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me.1983). In the absence of expert testimony that the roof and door structures of the F-250 posed an unreasonable risk of harm given the risks and utility of the truck's design and the feasibility of safer alternative designs, the plaintiff cannot prove her case.

Even if everything the plaintiff says about the F-250's doors and roof structures in her Statement of Additional Material Facts, and Opposition to the Motion for Summary Judgment, were true (which they are not) it doesn't change the fact that the plaintiff has offered absolutely no evidence that Ford departed from accepted standards in the field of automotive engineering in the design and manufacture of the F-250's door and roof structures. The plaintiff offered no evidence that the F-250 was unreasonably defective or dangerous or that its roof and door structures failed to perform adequately in this high speed rollover crash. In fact, the contrary is established by the uncontroverted testimony of Ford's expert witnesses. This testimony establishes the following:

> 1. The Taylor rollover accident, which involved a minimum of two complete rolls, was more severe than 98% of all rollover accidents. See Exhibit 1, Affidavit and Report of David Mercaldi at pg 8; Exhibit 2, Affidavit and Report of Jeffery Croteau at pgs. 22 and 24; Exhibit 3, Affidavit and Report of Catherine Corrigan at pg. 6.
>
> 2. Mr. Taylor's fatal head injury occurred due to entrapment of his head during a driver's side vehicle to ground contact after it had moved through the space between the window frame and the roof rail area that was opened due to

6

loading by Mr. Taylor's unrestrained body during the rollover. Exhibit 3 at pgs 6-7.

3. The latching and hinge systems of the driver's side doors of the vehicle exceed industry and Ford standards by a wide margin making them reasonably safe as designed. The fact that a door opens during a severe crash such as this one does not prove that the door or door latches are defective. The door latches of the driver's side doors were structurally overwhelmed by the extreme forces imparted on them in this severe rollover collision. The fact that they were overwhelmed does not mean that they are unreasonably dangerous or defective. The door latch and release system of the F-250 complies with all applicable industry and governmental standards in all respects and is reasonably safe and not defective as designed and manufactured in the subject vehicle. See Exhibit 4, Affidavit and Report of James Salmon at pgs. 6-7.

4. The total deformation of the roof was caused by impact loads of varying magnitudes, durations, and directions. The mere presence of deformation to the roof structure in this severe rollover crash does not mean that the design of the roof was defective or that it was improperly manufactured. The F-250 roof was a pragmatic design for the needs of daily driving and was reasonably designed to provide a reasonable level of occupant protection in the event of a rollover accident. The roof was not defectively designed or manufactured and performed appropriately in this rollover accident. Exhibit 2 at pgs. 4 and 24-25.

Because the plaintiff has failed to present qualified automotive engineering expert opinion testimony to support her defect claims, Ford is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Ford Motor Company respectfully requests that the Court grant summary judgment in its favor on plaintiff's strict liability and negligence claims.

FORD MOTOR COMPANY,
By its attorneys,
CAMPBELL CAMPBELL
EDWARDS & CONROY, P.C.

/s/ David M. Rogers
David M. Rogers (*pro hac vice*)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000


## CERTIFICATE OF SERVICE

I certify that a copy of the above document was served via the ECF/CM System to the following counsel of record on this 8th day of February 2008.

Samuel W. Lanham, Jr
Lanham Blackwell
470 Evergreen Woods
Bangor, ME  04401


/s/ David M. Rogers
David M. Rogers